# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

Orlando Division

| | | |
|---|---|---|
| | ) | Case No. _C :20-CV-390-ORL-41-(DQC_ |
| Lilibeth Michelson | ) | *(to be filled in by the Clerk's Office)* |
| _____ | ) | |
| **Plaintiff(s)** | ) | Jury Trial: *(check one)* [✓]Yes [ ]No |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| | ) | |
| Ryan D. McCarthy | ) | |
| _____ | ) | |
| **Defendant(s)** | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of names.)* | |

*(filing stamp: 2020 MAR -5 PM 3:01 FILED)*

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Lilibeth Michelson |
| Street Address | 2310 Ashmead Place, NW #102 |
| City and County | Washington |
| State and Zip Code | DC, 20009 |
| Telephone Number | 3862538318 |
| E-mail Address | michelsonz@hotmail.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 6

Defendant No. 1

    Name                            Ryan D. McCarthy

    Job or Title *(if known)*     Secretary, Department of the Army Agency

    Street Address              101 Army Pentagon,

    City and County           Washington,

    State and Zip Code       DC 20310-0101

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

C.    **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Embry-Riddle Aeronautical University ARMY ROTC |
| Street Address | 600 S. Clyde Morris Blvd |
| City and County | Daytona Beach, Volusia County |
| State and Zip Code | Florida, 32114 |
| Telephone Number | |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Other federal law *(specify the federal law)*:

☐    Relevant state law *(specify, if known)*:

☐    Relevant city or county law *(specify, if known)*:

III.    **Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.

☐    Termination of my employment.

☐    Failure to promote me.

☐    Failure to accommodate my disability.

☑    Unequal terms and conditions of my employment.

☑    Retaliation.

☑    Other acts *(specify)*:    Discrimination, Retaliation on the basis of National Origin and Sex

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

Ongoing    August 2013 - August 2016

C.    I believe that defendant(s) *(check one)*:

☑    is/are still committing these acts against me.

☐    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☐    race    _____

☐    color    _____

☑    gender/sex    _____

☐    religion    _____

☑    national origin    _____

☐    age *(year of birth)*    _____    *(only when asserting a claim of age discrimination.)*

☐    disability or perceived disability *(specify disability)*

_____

E.    The facts of my case are as follows. Attach additional pages if needed.

Agency ARTRADOC14MAY0174 and Agency ARTRADOC13AUG02809
Hearing Nos. 510-2014-00407X and 510-2014-00260X

\* Additional Pages are attached:
1. Appeal Decision (Appeal No. 0120182098)
2. Appeal Reconsideration (Appeal No. 0120182098)

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☑    issued a Notice of Right to Sue letter, which I received on *(date)*   03/09/2020   .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

\* Additional Pages are attached:

Relief

_____

**VII. Certification**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.      **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        5 March 2020

Signature of Plaintiff        _____

Printed Name of Plaintiff        Lilibeth Michelson

B.      **For Attorneys**

Date of signing:        _____

Signature of Attorney        _____
Printed Name of Attorney        _____
Bar Number        _____
Name of Law Firm        _____
Street Address        _____
State and Zip Code        _____
Telephone Number        _____
E-mail Address        _____

Relief

Wherefore, Plaintiff Lilibeth Michelson respectfully requests:

a.  that she be awarded compensatory damages in excess of $ 200,000 for the emotional anguish, pain and suffering that she has endured;

b.  that she be awarded back pay and benefits owed, if any, between the date of the first conduct complained of and the date of judgment in this matter;

c.  that an Order be entered directing that all disciplinary actions, negative comments and lowered evaluations, and forming a matter of public record, be expunged, or declared to have been improperly issued, to the extent permissible by Federal and Florida law;

d.  that an Order be entered directing DEFENDANT to not discriminate against Lilibeth Michelson and other similarly situated employees in the future;

e.  that Lilibeth Michelson be awarded the attorney's fees she had paid between the date of the first conduct complained of and the judgment in this matter;

f.  that, if Lilibeth Michelson later retains counsel and prevails, she be awarded costs of this action, including reasonable attorney's fees as a part of her costs, pursuant to 42 U.S.C. &1988; and

g.  that, Lilibeth Michelson be awarded such other legal and/or equitable relief as may be deemed appropriate by this Court.

Signature: _Michelson_

Date: 5 March 2020

## CERTIFICATE OF SERVICE

For timeliness purposes, the plaintiff will presume that this Complaint for Employment Discrimination was received within five (5) calendar days after the date it was sent *via U.S. Mail*. I certify that this Complaint for Employment Discrimination was mailed to the following recipient on the date below.

Ryan D. McCarthy
Secretary
Department of the Army Agency
101 Army Pentagon
Washington, DC  20310-0101


Lilibeth Michelson
Plaintiff
Date: 5 March 2020



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Lilibeth Michelson, a/k/a
Demetria G.,[1]
Complainant,

v.

Ryan D. McCarthy,
Secretary,
Department of the Army,
Agency.

Appeal No. 0120182098
Hearing Nos. 510-2014-00407X and 510-2014-00260X
Agency Nos. ARTRADOC14MAY01744 and ARTRADOC13AUG02809

<u>DECISION</u>

On June 1, 2018, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. For the following reasons, the Commission AFFIRMS the Agency's final order.

<u>ISSUE PRESENTED</u>

The issue presented is whether Complainant established that the record does not contain substantial evidence to support the EEOC Administrative Judge's (AJ) finding that she was not subjected to discrimination or harassment as she alleged.

<u>BACKGROUND</u>

At the time of events giving rise to this complaint, Complainant worked as a Supply Technician, GS-7 at the Agency's Embry-Riddle Aeronautical University in Daytona Beach, Florida. On August 12, 2014, Complainant filed an EEO complaint alleging that the Agency discriminated against her on the bases of national origin (Hispanic/Panama), and sex (female) when:

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

Complaint 1:

- a. On September 3, 2013, Complainant received a post-suspension counseling from her former supervisor A1;
- b. On August 15 and August 2, 2013, A2 (her second level supervisor) disciplined her differently than a co-worker for similar alleged offenses. Complainant received a suspension (three days) and the co-worker received a Letter of Reprimand;
- c. On August 9, 2013, A1 called Complainant on her furlough day in reference to her suspension:
- d. On August 5, 2013, Complainant informed A1 about an incident with a contractor. A1's response was "Oh, [the contractor] he is just an old man."
- e. On July 17, 2013, A2 sent Complainant, via e-mail through D3, the Master Sergeant, a Notification of Proposed Suspension (for 3-days) the day before her approved leave:
- f. On July 17, 2013, A2 charged Complainant with two hours of Leave Without Pay (LWOP):
- g. Co-workers could work through lunch breaks and leave early while Complainant and other minority workers were not.

Complaint 2:

Was Complainant discriminated against and/or subjected to a hostile work environment based on sex (female), national origin (Hispanic/Panama) and/or reprisal when from February 2014 to July 2014 as follows:

- (1) A2 increased his level of scrutiny of her work during Feb 2014 through May 2014 as evidenced by the following:

  - a. February 27, 2014, A2 sent her an email about working late after 1600; that she was not supposed to be in the office and instructed her to go home;
  - b. February 28, 2014, A2 asked a coworker if Complainant helps him load supplies and equipment when asked;
  - c. February 28, 2014, A2 gave her a written counseling about working outside her duty hours;
  - d. March 20, 2014, (at 6:02 pm) A2 sent her an email about missing multiple UFR list deadlines during the previous week.

- (2) On April 10, 2014, A2 gave her a letter of instruction/warning because she did not attend a mandatory battalion photo shoot on April 1, 2014;
- (3) On May 7, 2014, A1 gave her a written letter of counseling for suspected leave abuse;
- (4) On May 22, 2014, A2 counseled her about missing deadlines regarding the budget and advised that he intended to initiate an AR 15-6 investigation;

(5)     On June 23, 2014, A1 left a voicemail on her home phone telling her that her leave request was not in accordance with the SOP, just to say she is sick was not good enough and she was to come in and he would determine if she was sick;

(6)     On June 25, 2014, A2 requested an informal investigation and Complainant became the subject of an AR 15-6 investigation regarding allegations of misuse of a vehicle for personal use;

(7)     On July 15, 2014, A1 disapproved Complainant's leave request for July 10 - 11, 2014, after she had provided a doctor's note and before she was issued the letter of restriction charging her as AWOL for those days;

(8)     On July 16, 2014, A1 issued her a leave restriction letter for unsatisfactory attendance;

(9)     On July 18, 2014, A1 disapproved her leave request for July 17, 2014, after she provided him with a doctor's note;

(10)    On July 25, 2014, A1 disapproved a two-hour sick leave request for July 25, 2014, submitted before the leave restriction letter and resulting in her missing a doctor's appointment;

## Complaint 2 – five additional allegations

(11)    On August 12, 2014, A1 requested Complainant make a copy of her Common Access Card (CAC). When Complainant refused to do so, A1 stated that he would cancel Complainant's leave which was approved on August 11, 2014;

(12)    On June 17, 2015, Complainant discovered her Office of Personnel Management (OPM) Certificate in Recognition of 20 Years of Service to the United States Government dated January 31, 2014, in A2's office trash can;

(13)    On May 16, 2016, Complainant discovered a note in her mailbox entitled, "Zero Talent," when A2 was in the ROTC building between Complainant's last mailbox check on May 11, 2016, and when she discovered the note on May 16, 2016;

(14)    On July 11, 2016, Complainant found a note in her office mail box that stated, "10 Things that Require Zero Talent," with numbers 2, 3, 6, 9 and 10 highlighted in yellow;

(15)    On August 22, 2016, Complainant became aware that on July 17, 2014, A1 recorded their telephone conversation without her knowledge; when on August 12, 2014, in response to the Investigation and Resolution Division (IRD), Investigator's questions, A1 denied knowledge of the specific details on July 17, 2014.

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of her right to request a hearing before an Administrative Judge. Complainant timely requested a hearing, and the AJ held a hearing August 21 - 23, 2017. Pursuant to Complainant's request, Complaint Nos. 1 and 2 were consolidated for the hearing. The AJ issued a decision on March 19, 2018.

When the Agency failed to issue a final order within forty days of receipt of the AJ's decision, the AJ's decision finding that Complainant failed to prove that the Agency subjected her to discrimination or harassment as alleged became the Agency's final action pursuant to 29 C.F.R. § 1614.109(i). Complainant disagreed with the AJ's decision, and Complainant filed the instant appeal.

## CONTENTIONS ON APPEAL

On appeal, Complainant contends, among other things, that the investigation was flawed, the investigator had the incorrect email address for her so that was why she did not respond, that not all her witnesses were interviewed, and that other employees believed that she was targeted. Complainant also maintains that her privacy was violated when on August 23, 2017, she became aware that A1 had copies of her IRD investigation. She removed the records from his office but was thereafter, ordered to return them.

In response, the Agency, in pertinent part, requests that the AJ's decision finding no discrimination or harassment be affirmed.

## ANALYSIS AND FINDINGS

Pursuant to 29 C.F.R. § 1614.405(a), all post-hearing factual findings by an AJ will be upheld if supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 477 (1951) (citation omitted). A finding regarding whether or not discriminatory intent existed is a factual finding. See Pullman-Standard Co. v. Swint, 456 U.S. 273, 293 (1982). An AJ's conclusions of law are subject to a de novo standard of review, whether or not a hearing was held. An AJ's credibility determination based on the demeanor of a witness or on the tone of voice of a witness will be accepted unless documents or other objective evidence so contradicts the testimony, or the testimony so lacks in credibility that a reasonable fact finder would not credit it. See EEOC Management Directive 110, Chapter 9, at § VI.B. (Aug. 5, 2015).

Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VI.C (Aug. 5, 2015) provides that on appeal to the Commission, the burden is squarely on the party challenging the AJ's decision to demonstrate that the AJ's factual determinations are not supported by substantial evidence. See id. In this case, this means that Complainant has the burden of pointing out where and why the AJ's findings are not supported by substantial evidence. Cf. id. (pointing out that "[t]he appeals statements of the parties, both supporting and opposing the [AJ's] decision, are vital in focusing the inquiry on appeal so that it can be determined whether the [AJ's] factual determinations are supported by substantial evidence").

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we find that Complainant has not presented any persuasive evidence, other than her conclusionary statements, that the AJ erred in finding that she was not discriminated against. We find that the record contains substantial evidence to support the AJ's findings and conclusions. Specifically, we note that the AJ: after examining all of the claims, found that assuming, arguendo, Complainant established a prima facie case of discrimination with respect to all of her claims, the Agency articulated legitimate, nondiscriminatory reasons for its actions. In Complaint No. 1, issues a - g, the AJ found that Complainant hung a sign on her door that was determined to be inappropriate.[2] Contrary to Complainant's assertion otherwise both she and her coworker, who was also found to have been responsible for the sign, were both disciplined. They were both disciplined for having the sign on their door and for submitting time and attendance cards with inaccurate information. Complainant was disciplined more severely than her male coworker because she was also charged with being AWOL for leaving work on May 30, 2013, two hours early without prior approval. The AJ did not find Complainant's testimony regarding these incidents credible.

With respect to the AWOL charge with resulted in the issuance of a proposed suspension, Complainant testified that she went to the dentist for five minutes during lunch, from 2:00 pm to 2:05 pm. The AJ found that it was impossible for Complainant to have returned by 2:05 pm, when the dentist was at least ten minutes away in each direction based on MapQuest directions. Moreover, the AJ found that Complainant could not provide specific information about how her coworkers were treated more favorably than she.

Complainant also alleged that after she reported that a contractor had slammed a door, A1 responded that the contractor was "just an old man." During her testimony, Complainant could not explain how this statement was discriminatory towards her. Complainant also testified that A1 called her at home during her furlough to tell her a decision had been made about her proposed suspension. Complainant was told not to come into work the following Monday. Complainant also alleged that she received a "post-suspension" counseling, but in fact, the record indicated that it was simply a review of her performance expectations, and no discipline was involved. The AJ found that Complainant failed to establish any nexus between her sex or national origin and these matters.

With regard to Complaint No. 2, issue 1 (a) – (d), the AJ again found that the Agency articulated legitimate, nondiscriminatory reasons for its actions. Complainant alleged that she was subjected to an increased level of scrutiny regarding her work, she was told not to work after her scheduled hours, she was given a developmental counseling regarding her schedule, A2 asked a coworker if Complainant was helping him load supplies, and A2 sent her an email advising her that she had missed multiple deadlines.

---

[2] The sign read "2 of the over 800,000 federal employees being financially raped of over 1/3 of my income for 11 weeks by the Government that hired me. With the possibility of more cuts next FY. God Bless America!!!"

The AJ found that none of these actions were disciplinary and Complainant failed to show any evidence that similarly situated coworkers outside of her protected groups were treated more favorably.

With respect to issues 2 and 3, the evidence showed that Complainant was advised that she was to attend all important cadet functions and ceremonies. The AJ found, however, that Complainant continued to not attend these mandatory events. The AJ did not find Complainant's testimony credible regarding this issue, and she did not show that employees not of her protected bases were treated differently. Also, the AJ noted that Complainant was not counseled for excessive leave usage but was counseled for using leave to bypass mandatory events.

Regarding, issues 4 and 6, the May 22, 2014 meeting, deadlines and the misuse of a car, the AJ called into question Complainant's credibility regarding her assertions about these issues. The AJ noted that Complainant was given a mid-point developmental counseling because she continued to miss deadlines. Also, Complainant would not discuss, or produce a copy of her CAD card (which was thought to have expired) during the hearing. Complainant was also told that A2 intended to initiate an investigation into the misuse of her government car because she was alleged to have used it for her personal use. Complainant took the car to the opposite coast of Florida. She maintained that it was to renew her identification card, but, as noted, she failed to produce it. When she did not return the car by the end of the day, she was repeatedly called, campus security was notified, and A2 maintained that he passed by her house at midnight and continued calling her with no results. The record indicates that Complainant returned the car at 12:30 am on May 14th and it had been driven over 500 miles. Based on these facts, management requested a formal investigation to determine if the government car was misused. Because Complainant refused to speak to the investigator, the investigation concluded that there was insufficient evidence to find that there was misuse of the car. Complainant admitted that she did not speak to the investigator and instead gave him her attorney's card.

The AJ found with respect to leave issues, issues 5, 7, 8, 9,10, and 15, management credibly testified that Complainant did not uphold to the standard leave requests procedures. A1 testified that Complainant's sick leave issues occurred not only due to her pattern of taking sick leave but also because she never identified how she was limited or incapacitated. Complainant had a pattern of taking sick leave during days when all employees were required to attend commissioning ceremonies, meetings and other events including the graduation of the cadets. With respect to Complainant's assertion that A1 had recorded her two years earlier, issue 15, A1 denied that he did this and indicated that he simply took notes and later typed the conversation. Complainant did not provide any evidence to refute this explanation.

Finally, with regard to issues 11 through 14, Complainant alleged that A1 requested a copy of her government ID, she found her 20-year service certificate in A2's trash and she found two notes in in her mailbox with writings that included, "Zero Talent." A1 testified that he requested a copy of the card from Complainant after the investigator told him that he needed it. Thereafter, the investigator told him that he did not need a copy, so A1 withdrew his request. A2 testified that he had no idea who placed the notes in Complainant's mailbox.

A2 also testified that he was leaving the unit and was cleaning his office so many things were thrown away. He testified that there were many things in the trash, including information about himself and others. A2 testified that if this document went in the trash it was purely accidental. The AJ found that there was no evidence linking Complainant's protected categories to the challenged actions.

With respect to Complainant's claim of hostile work environment, the AJ found that there was simply no evidence that any of the incidents as described by the Complainant were discriminatorily or retaliatorily motivated, nor were they indicative of actions that were severe, pervasive or wide-spread. For the most part, the record indicated that the actions and comments at issue described common workplace interactions and supervisory instructions to which Complainant simply did not agree. Based on the totality of the circumstances, the AJ found that Complainant did not demonstrate that she was subjected to a hostile working environment based upon sex, national origin and/or prior protected activity. As noted above, we find that there is substantial evidence in the record to support the AJ's findings and conclusions.

With respect to Complainant's contentions on appeal about the adequacy of the Agency's investigation, we find that because she elected to have a hearing before an Administrative Judge she had the opportunity to cure any perceived deficiencies with the Agency's investigation. We find no persuasive evidence that Complainant was prevented from curing any problems with the investigation during the hearing. Similarly, we find that Complainant has not provided any evidence that the AJ's credibility determinations were improper or that she prohibited from calling witnesses to support her claims.

## CONCLUSION

Accordingly, we AFFIIRM the Agency's final order.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0617)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision.

A party shall have **twenty (20) calendar days** of receipt of another party's timely request for reconsideration in which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission. Complainant's request may be submitted via regular mail to P.O. Box 77960, Washington, DC 20013, or by certified mail to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The agency's request must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests.

Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

_Carlton M. Hadden, Director_
Office of Federal Operations

December 4, 2019
Date

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.  I certify that this decision was mailed to the following recipients on the date below:

Lilibeth Michelson
105 Boynton Blvd.
Daytona Beach, FL  32118

Department of the Army
Director, EEO Compliance and Complaints Review, (EEOCCR)
ATTN: SAMR-EO-CCR (Spurgeon A. Moore)
5825 21st Street, Bldg 214, Room 129
Fort Belvoir, VA 22060-5921

December 4, 2019
Date

Compliance and Control Division

1. **Regarding the Door Note and Suspension**

   Mr. Noble and I received the same offenses (Reason 1 - Note in front of supply room) and (Reason 3 - Incorrect code on timecard). We are both supply technicians, same grade (different sex, race and national origin.) Reason 2 & 4 were added to me (leave without authorization and failure of leave procedure) for an incident that occurred 30 May 2013, all proof was provided and punishment still occurred through no pay for (2) hours of AWOL charged for May 30, 2013 and in that pay period. This should not have been used as means to re-punish me again by adding it to a decision to suspend. Mr. Noble (Male, African American, U.S.A) received a letter of reprimand and I (Female, Hispanic, Panama) experienced disparate treatment by receiving a 3-day suspension with loss of pay. In this pay period, I received 48 hour pay out of my regular 80 hour pay. This was also placed as a first offense on my permanent record. In this situation, the Hispanic Female Supply Technician was treated with worse punishment then the African American Male. Also note ALL these incidents and accusations occurred on the same day May 30, 2013 and have nothing to do with performance. (A quick timeline of this day) MAJ Lueders called about the timesheet code, we both changed/corrected it, CPT Reyes discovered the note while looking for me in the supply room and LTC Messner followed and questioned Mr. Noble about the note and my whereabouts and assumed I left without authorization and failed to follow leave procedure.

   Michelson Exhibit:
   10. August 28 2013 Response to Notification of Decision to Suspend to Terry Ortega from Lilibeth Michelson.
   "I did not place or have any knowledge of the posted sign outside my office. There exists no proof, whatsoever, that I had any knowledge of the posted sign. Had I left my office such that I could see the sign, I would have immediately removed it."

   *I wasn't even in the office when the note was discovered.*

   Agency Exhibit:
   Exhibit 34 - Tab 6 - Memorandum For Record - 5 June 2013
   "CPT Reyes and I were unable to locate and talk with Ms. Michelson. While attempting to talk with Mrs. Michelson and Mr. Noble, CPT Reyes went to the ERAU supply room. He discovered a very derogative sign on the supply room entrance"

   *I responded to LTC Messner that I had no role in the posting of the note.*

   Michelson Exhibit:
   11. May 31 2013 Email LTC Garret Messner questioning reasons for suspension and Lilibeth Michelson's response and explanation to all reasons.
   "3. I have no role on any posting note."

I have since found out a Navy Civilian that worked in the building placed the sign and because I was the target, no investigation was conducted. However, when the note with "Zero Talent" was placed in my mailbox and no one knew who did it, no targeted disciplinary action was taken toward anyone.

2. **Regarding Awol Charge for Dentist Trip**
   On May 30, 2013, I went to the dentist during my lunch time and returned to work within one half hour (not within 5 mins.) I did not have a scheduled lunch time. The office is 6.32 miles away and takes approximately 10 minutes to get there. I was at the office for a total of five (5) minutes. The trip took approximately 10 mins to get there, 5 minutes at the office and 10 mins returning which means I was gone for approximately 25 mins when I am entitled to a 30 min lunch break. I was charged two (2) hours leave without pay for taking my one half hour entitled lunch break. See Memorandum dated 28 August 2013 for support.

3. **Regarding Cadet Functions**
   Cadet functions and commissioning ceremonies were not mandatory events and are not part of my duties to attend.

4. **Regarding Copying the CAC card**
   There are regulations protecting the copying of government CAC identification cards. I explained this and even sought out the appropriate information regarding the copying of the CAC card. (See Intake Form from 3 Sept. 2014)

5. **Regarding Government Vehicle Investigation**
   Upon getting verbal approval from LTC Messner, to replace official CAC card, which took longer than expected. Nonetheless, was official business. LTC Messner claimed I refused to discuss with him the incident 9 days prior when he told me we was initiating and AR 15-6 investigation but what I told him was that I had already told MAJ Leuders the details of my travel when I returned that day and that he should talk to him. Through my experience, LTC Messner misrepresents my statements when he uses intimidation and selectively documents my details. See Case 1-b email from LTC Messner regarding official business travel on May 30, 2013. (Agency Exhibit, 16)
   Agency Exhibit
   Exhibit 16 - Email thread between LTC Garret Messner and CPT Kenneth Reyes and Terry Ortega on Friday, May 31, 2013 3:41 PM

   Exhibit 34 - Tab 6 - Developmental Counseling Form from LTC Garret Messner on May 22, 2014
   "Ms. Michelson refused to discuss the CAC incident with 22 May 2014"
   "I intend to initiate and AR 15-6"

   I have never seen the results from this AR 15-6 investigation or supporting documentation but from the Agency's selective exhibits it seems to have been unsubstantiated and Terry Ortega has claimed that it was **"poorly conducted."** The

investigator MAJ Lawrence indicated to LTC Walden the following: "Sir, the only other issue I see here is the possible contributing/extenuating circumstances surrounding the case that may indicate larger problems in the BN and implicate others in the Cadre which could possibly extend the case longer. What I mean by this is that others may be colluding with Ms. Michelson (with missing files and documents), while others may be seeking retaliation for prior incidents (with faulty documents and improper requests)."

Terry Ortega backs up her sworn statement with this "Based on the information provided **my recommendation, as the servicing MER Specialist would have been to propose Ms. Michelson's removal from federal service** based on willful misuse of the government passenger vehicle (GSA), failure to comply with policies and procedures, submission of a false timecard. **However, 15-6 investigation to my knowledge was not closed out, or if it was no action disciplinary/adverse action was requested."**

Terry Ortega includes the email from MAJ Lawrence and acknowledges by stating "Not included in my statement." in a forwarded thread.

Terry Ortega undermining/dismissing the validity of the investigation with "poorly conducted" because investigator MAJ Lawrence indicated concerns of **"others seeking retaliation for prior incidents"** along with her personal recommendation of "Ms. Michelson's removal from federal service" shows the true motives of LTC Messner's investigation against me. The lack of movement and transparency of the AR 15-6 Investigation results shows that it was not in the Agency's best interest to further investigate when there was a suspicion of "faulty documents and improper requests" along with the "seeking of retaliation for prior incidents."

HR Specialist: Terry Ortega
Date Provided to Management: 8 Oct 14
Lewis's observations of investigation and Ortega's responses.
Exhibit 6 - Page 22 - Original Message - Subject: RE: 15-6 SITREP (UNCLASSIFIED) - From: Lewis, Lawrence J Jr MAJ USARMY USACC (US)
"Sir, the only other issue I see here is the possible contributing/extenuating circumstances surrounding the case that may indicate larger problems in the BN and implicate others in the Cadre which could possibly extend the case longer. What I mean by this is that others may be colluding with Ms. Michelson (with missing files and documents), while others may be seeking retaliation for prior incidents (with faulty documents and improper requests)."

Ortega's Sworn Statement - CHRA/CPAC/Fort Knox
Exhibit 6- Page 1
"After reviewing the 15-6 investigation into the alleged misuse of the GSA. I went back to LTC Foy Walden to point out a number of issues with the findings and recommendations and that the investigation itself appeared to be poorly conducted."

"Based on the information provided my recommendation, as the servicing MER Specialist would have been to propose Ms. Michelson's removal from federal service

based on willful misuse of the government passenger vehicle (GSA), failure to comply with policies and procedures, submission of a false timecard. However, 15-6 investigation to my knowledge was not closed out, or if it was no action disciplinary/adverse action was requested."

Ortega exhibit to Sworn Statement email
Exhibit 6- Page 21 - Original Message –
From: Ortega, Terry L CI USARMY CHRA-SW (US)
Sent: Tuesday, September 29, 2015 3:32 PM
To: Chelluri, Karin M MAJ USARMY TRADOC (US)
Subject: RE: 15-6 SITREP (UNCLASSIFIED)
"Not included in my statement."

Exhibit 6- Page 22 - Original Message –
From: Lewis, Lawrence J Jr MAJ USARMY USACC (US)
Sent: Monday, July 14, 2014 2:22 PM
To: Walden, Foy S LTC USARMY USACC (US)
Subject: RE: 15-6 SITREP (UNCLASSIFIED)
"Sir, the only other issue I see here is the possible contributing/extenuating circumstances surrounding the case that may indicate larger problems in the BN and implicate others in the Cadre which could possibly extend the case longer. What I mean by this is that others may be colluding with Ms. Michelson (with missing files and documents), while others may be seeking retaliation for prior incidents (with faulty documents and improper requests)."

Equal Employment Opportunity Commission (EEOC)
Director
Office of Federal Operations
131 M Street, NE
Washington, DC 20507

I, Lilibeth Michelson (Complainant), request reconsideration of the decision of this case due to clearly erroneous interpretation of material fact or law with the attached supporting documentation.

_L Michelson_

Lilibeth Michelson

January 4, 2020
Date

# CERTIFICATE OF MAILING

I certify that on Dec 30, 2019, the enclosed documents were sent via first class mail to the following:

Equal Employment Opportunity Commission (EEOC)
Director
Office of Federal Operations
131 M Street, NE
Washington, DC 20507


Department of the Army
Director, EEO Compliance and Complaints Review, (EEOCCR)
ATTN: SAMR-EO-CCR (Spurgeon A. Moore)
5825 21st Street, Bldg 214, Room 129
Fort Belvoir, VA 22060-5921


January 4, 2020
Date


Lilibeth Michelson